A

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.                          SUPERIOR COURT DEPARTMENT
                                    CIVIL ACTION NO.: 07-1733B


FORREST PETTENGILL,                 )
                                    )
                                    )
                                    )
        Plaintiff,                  )
                                    )
v.                                  )
                                    )
HOWARD CURTIS; THE CITY OF          )
HAVERHILL, MASSACHUSETTS;           )
BOY SCOUTS OF AMERICA;              )
YANKEE CLIPPER COUNCIL INC.,        )
BOY SCOUTS OF AMERICA               )
(formerly known as LONE TREE        )
COUNCIL OF BOY SCOUTS OF            )
AMERICA); JOHN DOE ONE; and         )
JOHN DOE TWO                        )
                                    )
        Defendants.                 )
                                    )

RECEIVED

SEP 2 0 2007

## PLAINTIFF'S COMPLAINT AND JURY DEMAND

### The Parties

1.      The plaintiff Forrest Pettengill is an individual who resides in Concord, New

Hampshire. He is a native of Haverhill, Massachusetts, where he was raised.

2.      The defendant Howard Curtis ("Curtis") is an individual, who, upon information

and belief, resides on Martha's Vineyard, Dukes County, Massachusetts. During the relevant

times hereto, Curtis was an employee of the Defendant City of Haverhill and was associated with

the Boy Scouts of America and Lone Tree Council, as an employee and/or a volunteer.

3.      The defendant City of Haverhill, Massachusetts ("City" or "Haverhill") was

incorporated as a city in 1870 and is located in Essex County, Massachusetts.

4.    The defendant Boy Scouts of America ("Boy Scouts") is a body politic organized and created pursuant to 36 U.S.C. c. 309, with a principal place of business in Irving, Texas, and which conducts business in Massachusetts.

5.    The defendant Yankee Clipper Council, Inc., Boy Scouts of America, ("Yankee Clipper Council" or "the Council") is the successor to the Lone Tree Council of Boy Scouts of America, ("Lone Tree Council"), and is a non-profit corporation organized under the laws of the State of New Hampshire, with a principal place of business in Kingston, New Hampshire, and which conducts business in Massachusetts.

6.    The defendant John Doe One was, at all relevant times, associated with the Boy Scouts of America and/or Lone Tree Council, and was responsible for hiring, retaining, overseeing, and supervising the actions of Howard Curtis, per Curtis's association with the Boy Scouts/Lone Tree Council.

7.    The defendant John Doe Two was, at all relevant times, associated with the Boy Scouts of America and/or Lone Tree Council, and was responsible for, *inter alia*, instituting policies, protocols, and procedures to a) ensure that the Boy Scouts of America and local organizations such as the Lone Tree Council were not utilized as a haven for child molesters to sexually abuse children; b) prevent child abuse and molestation within the Boy Scouts; and c) protect the children in the Boy Scouts' and/or Lone Tree Council's custody.

## Jurisdiction and Venue

8.    This Court has subject matter jurisdiction over this action pursuant to M.G. L. c. 212, §4. Venue is proper in this court pursuant to M.G. L. c. 223, §§1 and 8.

2

## Facts

### The Boy Scouts of America/Lone Tree Council

9.     Pettengill joined the Boy Scouts and Lone Tree Council in approximately 1983 or 1984, and shortly thereafter met the Defendant Howard Curtis. At this time, Pettengill was 10 or 11 years old.

10.     Curtis was an assistant leader of Pettengill's troop and was an employee and/or a volunteer of the Boy Scouts and Lone Tree Council.

11.     In approximately 1984 or 1985, Curtis began repeatedly sexually molesting Pettengill and forcing Pettengill to engage in sexual acts.

12.     The Boy Scouts, Lone Tree Council, and John Doe One had a duty to hire, employ, supervise, direct, train, control, and retain Curtis during the relevant time period; and had a duty to protect children who could be harmed and abused by individuals such as Curtis, during the time Pettengill was a Boy Scout. The Boy Scouts, Lone Tree Council and John Doe One failed in these duties to Pettengill.

13.     The Boy Scouts, Lone Tree Council, and John Doe One had a duty to prevent Curtis from using his Boy Scouts position to sexually abuse and molest children, including Pettengill. The Boy Scouts, Lone Tree Council and John Doe One breached this duty by failing to ensure that Curtis did not sexually abuse children, including Pettengill.

14.     The Boy Scouts, Lone Tree Council, and John Doe Two had a duty to institute policies, protocols, and procedures to a) ensure that the Boy Scouts of America and local organizations such as the Lone Tree Council were not utilized as a haven for child molesters to sexually abuse children; b) prevent child abuse and molestation within the Boy Scouts; and c) protect the children in the Boy Scouts' and/or Lone Tree Council's custody.

3

15.     The Boy Scouts, Lone Tree Council and John Doe Two breached this duty by
failing to institute appropriate policies, protocols, and procedures to ensure against sexual abuse.

16.     As a result of Curtis' sexual molestation and the negligence of Boy Scouts, Lone
Tree Council, John Doe One, and John Doe Two, Pettengill has suffered damages, including
severe physical and emotional injuries.

## The City of Haverhill

17.     Upon information and belief, Defendant Howard Curtis was employed by the City
of Haverhill as the city's Library Director from approximately 1980 until approximately 1995.

18.     In approximately 1986, Curtis recruited Pettengill, then approximately 13 years
old, to work for him at the City Library. Pettengill was thereafter a part-time employee with the
City of Haverhill as a public library employee.

19.     Pettengill worked for the City for approximately five years. Throughout
Pettengill's tenure as a library employee, Defendant Curtis repeatedly sexually molested
Pettengill and forced Pettengill to engage in sexual acts.

20.     Curtis was Pettengill's direct supervisor at the City Library. Pettengill's job
responsibilities consisted of whatever tasks Curtis assigned to him, including, but not limited to,
setting up and tearing down exhibits and data entry.

21.     Curtis lured Pettengill to the library at night, after normal business hours, for
sexual activity.

22.     The City of Haverhill, as Curtis' employer, had a duty to hire, employ, supervise,
direct, train, control, and retain Curtis during the relevant time period; and had a duty to protect
children who could be harmed and abused by City employees, such as Curtis, during the time

4

Pettengill worked for the City as a library employee and reported directly to Curtis. It failed in these duties to Pettengill.

23.    The City had a duty to prevent Curtis from using the library as a haven for sexual abuse and molestation. The City breached this duty, and did nothing to ensure that Curtis did not sexually abuse children, including Pettengill.

24.    As a result of Curtis' sexual molestation, Pettengill has suffered damages, including severe physical and emotional injuries.

## COUNT ONE

### Pettengill v. Curtis

### Violation of Mass G. L. c. 151B (Sexual Harassment)

25.    The Plaintiff repeats and realleges the allegations above as if fully stated herein.

26.    Curtis recruited Pettengill to work for him part-time at the City of Haverhill public library. Curtis was Pettengill's supervisor and directed his activities at the library.

27.    Curtis subjected Pettengill to unwelcome conduct of a sexual nature, which unreasonably interfered with Pettengill's work performance.

28.    With his conduct, Curtis created an intimidating, hostile, and sexually offensive work environment for Pettengill.

29.    As a direct and proximate result of Curtis' conduct, the Plaintiff suffered damages, including physical and emotional injuries, and will continue to suffer damages in the future.

5

## COUNT TWO

### Pettengill v. Curtis

### Sexual Assault and Battery

30.    The Plaintiff repeats and realleges the allegations above as if fully stated herein.

31.    By engaging in the egregious and explicit sexual behavior described above, Curtis acted intentionally so as to cause harmful and offensive contact with Pettengill.

32.    As a direct and proximate result of Curtis' unjustified harmful and offensive contact, Pettengill suffered damages, including physical and emotional injuries, and will continue to suffer damages in the future.

### COUNT THREE

### Pettengill v. Curtis

### Intentional Infliction of Emotional Distress

33.    The Plaintiff repeats and realleges the allegations above as if fully stated herein.

34.    By engaging in the egregious and explicit sexual behavior described above, Curtis intended to inflict emotional distress upon Pettengill, or knew or should have known that emotional distress was the likely result of his conduct.

35.    Curtis' conduct as described above was extreme and outrageous, beyond all possible bounds of decency, and utterly intolerable in a civilized community.

36.    As a direct and proximate result of Curtis' conduct, Pettengill suffered severe physical and emotional distress.

6

## COUNT FOUR

### Pettengill v. Curtis

### Negligence

37.   The Plaintiff repeats and realleges the allegations above as if fully stated herein.

38.   Curtis owed Pettengill a duty to refrain from, *inter alia*: violating the boundaries imposed by the supervisor-employee relationship; physically and sexually abusing him when he was a child and a teenager; molesting him, and causing him harm.

39.   Curtis repeatedly breached those duties by his abusive acts and conduct.

40.   As a direct and proximate result of Curtis' negligence, the Plaintiff suffered damages, including physical injuries, and will continue to suffer damages in the future.

## COUNT FIVE

### Pettengill v. Curtis

### Negligent Infliction of Emotional Distress

41.   The Plaintiff repeats and realleges the allegations above as if fully stated herein.

42.   As a direct and proximate result of Curtis' negligence, Pettengill has suffered severe emotional distress and anguish with resulting physical symptoms and injury.

## COUNT SIX

### Pettengill v. City of Haverhill

### Violation of Mass G. L. c. 151B (Sexual Harassment)

43.   The Plaintiff repeats and realleges the allegations above as if fully stated herein.

44.   Curtis subjected Pettengill to unwelcome conduct of a sexual nature, which unreasonably interfered with Pettengill's work performance. Curtis was Pettengill's direct supervisor at the Library.

7

45.   Curtis' conduct created an intimidating, hostile, humiliating or sexually offensive work environment for Pettengill.

46.   The City of Haverhill is strictly liable for the sexual harassment of Pettengill by his direct supervisor, Curtis.

47.   As a direct and proximate result of Curtis' conduct alleged as described herein, Pettengill suffered damages, including physical and emotional injuries, and will continue to suffer damages in the future.

## COUNT SEVEN

### Pettengill v. City of Haverhill

#### Violation of the Mass. Tort Claims Act, G. L. c. 258 (Negligence)

48.   The Plaintiff repeats and realleges the allegations above as if fully stated herein.

49.   As set forth above, Curtis was Pettengill's direct supervisor and sexually abused Pettengill while Pettengill was a City employee.

50.   Curtis harmed Pettengill while he was the City of Haverhill Library Director and acting within the scope of his employment.

51.   The City is vicariously liable for Curtis' conduct because Curtis' acts were committed within the scope of his employment as the Library Director.

52.   The City is vicariously liable for damages Pettengill suffered as a result of Curtis' sexual abuse.

53.   In addition, during the relevant time period, the City of Haverhill was responsible for the hiring, retention, direction, and supervision of Curtis.

54.   The City negligently hired and retained Curtis, and negligently, improperly, and inadequately directed and supervised him.

8

55.     As a direct and proximate result of the City's negligence, the Plaintiff suffered

damages, including physical and emotional injuries, and will continue to suffer damages in the

future.

56.     On November 10, 2006, pursuant to G.L. c. 258, § 4, Pettengill presented a claim

under that statute to William D. Cox Jr., Esquire, who was City Solicitor for the City of

Haverhill and, in accordance with G.L. c. 258, § 1, a Public Attorney of the City for purposes of

the presentment of Pettengill's claim.

57.     Presentment of that letter was proper under G.L. c. 258, § 4.

58.     The City did not respond to the letter and did not make any settlement offer.

## COUNT EIGHT

### Pettengill v. City of Haverhill

### Violation of the Mass. Tort Claims Act, G. L. c. 258 (Negligent Infliction of Emotional Distress)

59.     The Plaintiff repeats and realleges the allegations above as if fully stated herein.

60.     As a direct and proximate result of the City's negligence, Pettengill has suffered

severe emotional distress and anguish with resulting physical symptoms and injury.

## COUNT NINE

### Pettengill v. Boy Scouts of America and Lone Tree Council

### Respondeat Superior

61.     The Plaintiff repeats and realleges the allegations above as if fully stated herein.

62.     During the relevant time period, Curtis was a Boy Scouts/Lone Tree Council

troop leader and Pettengill was a member of the troop.

9

63.     The Boy Scouts and Lone Tree Council are vicariously liable for Curtis' conduct because Curtis' acts were committed within the scope of his employment as a troop leader and his affiliation with the Boy Scouts.

64.  ·  The Boy Scouts and Lone Tree Council are vicariously liable for damages Pettengill suffered as a result of Curtis' sexual abuse.

## COUNT TEN

### Pettengill v. Boy Scouts of America, Lone Tree Council, and John Doe One

#### Negligence

65.     The Plaintiff repeats and realleges the allegations above as if fully stated herein.

66.     During the relevant time period, the Boy Scouts, Lone Tree Council, and John Doe One were responsible for the hiring, retention, direction, and supervision of Curtis.

67.     During the relevant time period, the Boy Scouts, Lone Tree Council, and John Doe One negligently hired and retained Curtis, and negligently, improperly, and inadequately directed and supervised him.

68.     As a direct and proximate result of the Boy Scouts', Lone Tree Council's, and John Doe One's negligence, the Plaintiff suffered damages, including physical and emotional injuries, and will continue to suffer damages in the future.

## COUNT ELEVEN

### Pettengill v. Boy Scouts of America, Lone Tree Council, and John Doe One

#### Negligent Infliction of Emotional Distress

69.     The Plaintiff repeats and realleges the allegations above as if fully stated herein.

10

70. As a direct and proximate result of the Boy Scouts', Lone Tree Council's, and John Doe One's negligence, Pettengill has suffered severe emotional distress and anguish with resulting physical symptoms and injury.

## COUNT TWELVE

### Pettengill v. Boy Scouts of America, Lone Tree Council, and John Doe Two

#### Negligence

71. The Plaintiff repeats and realleges the allegations above as if fully stated herein.

72. During the relevant time period, the Boy Scouts, Lone Tree Council, and John Doe Two were responsible for, *inter alia*, instituting policies, protocols, and procedures to a) ensure that the Boy Scouts of America and local organizations such as the Lone Tree Council were not utilized as a haven for child molesters to sexually abuse children; b) prevent child abuse and molestation; and c) protect the children in their custody.

73. During the relevant time period, the Boy Scouts, Lone Tree Council, and John Doe Two were negligent in their failure to institute and/or implement such policies, protocols, and procedures.

74. As a direct and proximate result of the Boy Scouts', Lone Tree Council's, and John Doe Two's negligence, the Plaintiff suffered damages, including physical and emotional injuries, and will continue to suffer damages in the future.

## COUNT THIRTEEN

### Pettengill v. Boy Scouts of America, Lone Tree Council, and John Doe Two

#### Negligent Infliction of Emotional Distress

75. The Plaintiff repeats and realleges the allegations above as if fully stated herein.

11

76.     As a direct and proximate result of the Boy Scouts', Lone Tree Council's, and

John Doe Two's negligence, Pettengill has suffered severe emotional distress and anguish with

resulting physical symptoms and injury.


WHEREFORE, Plaintiff prays that this Honorable Court:

a.      enter judgment in his favor on Counts One through Thirteen;

b.      award damages as allowed by law, plus interest at 12% from the date of the original Complaint;

c.      award costs and attorneys' fees;

d.      award punitive damages; and

e.      grant such other and further relief as this Court deems just and appropriate.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.


The Plaintiff,

FORREST PETTENGILL

By his attorneys,

*Matt 7-2*

Lisa G. Arrowood (BBO #022330)
Matthew J. Fogelman (BBO #653916)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

Dated: September 13, 2007

12

**B**

(TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:* · TORT · MOTOR VEHICLE TORT ·
CONTRACT · EQUITABLE RELIEF · OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX. ss.

SUPERIOR COURT
CIVIL ACTION
No. 2007-1733B

Forrest Pettengill
.................................................................................................................................., Plaintiff(s)

v.

Howard Curtis; The City of Haverhill, Massachusetts; Boy Scouts of
America; Yankee Clipper Council Inc., Boy Scouts of America (f/k/a
Lone Tree Council of Boy Scouts of America); John Doe One and
John Doe Two............................................................................................................., Defendant(s)

## SUMMONS

To the above named Defendant: Boy Scouts of America

You are hereby summoned and required to serve upon ___ Matthew J. Fogelman, Esq._____,

plaintiff's attorney, whose address is Todd & Weld LLP, 28 State St., Boston, MA  02109 , an answer to the

complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the

day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at
34 Federal St.,
Salem, MA  01970_____ either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

WITNESS, SUZANNE V. DelVECCHIO, Esquire, at Salem, the
day of                              , in the year of our Lord two thousand



Thomas H. Driscoll Jr.
Clerk

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each
   defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either 3 yourself or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the the original in the Clerk's Office.



*ACK-MA-26307*

# CAPITOL CORPORATE SERVICES

P.O. Box 1831

Austin, TX 78767

Phone: (800) 345-4647   Fax: (800) 472-0533

## Client Acknowledgement Receipt of Service Of Process

| DEBBIE WISE<br>BOY SCOUTS OF AMERICA<br>1325 W WALNUT HILL LN<br>IRVING, TX 75015 | Processed Date : 9/19/2007 |
|---|---|
| | Completed By : Jennie Fusco |
| | Client Delivery Method : FedEx Standard Overnight Letter |
| | Tracking Number : 672513409431 |

| Date / Time Received | Transmittal # | Delivered to Agent By |
|---|---|---|
| 9/19/2007  10:30:00AM in Massachusetts | MA-26307 | Process Server |

**With Regard To Client**

NATIONAL BOY SCOUTS OF AMERICA FOUNDATION

**Title of Case or Action**

Forrest Pettengill v. Boy Scouts of America

**Case Number**

2007-1733B

**Court Name**

Essex County Superior Court, MA

### Acknowledgement of Receipt of Service of Process

Please sign, date and return this notice acknowledging receipt of SOP documents. An addressed, stamped envelope is enclosed for your convenience.

**Received By :** _____   **Date :** _____

### Client Acknowledgement Copy

**c**

## COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS

SUPERIOR COURT
C.A. NO. ESC2007-01733B

| | |
|---|---|
| FORREST PETTENGILL<br><br>    Plaintiff<br><br>v.<br><br>HOWARD CURTIS, CITY OF HAVERHILL,<br>MASSACHUSETTS, BOYS SCOUTS OF<br>AMERICA, YANKEE CLIPPER COUNCIL,<br>INC., BOY SCOUTS OF AMERICA (f/k/a<br>LONE TREE COUNCIL OF BOY SCOUTS<br>OF AMERICA), JOHN DOE ONE and JOHN<br>DOE TWO,<br><br>    Defendants | DEFENDANT CITY OF HAVERHILL'S<br>MOTION TO DISMISS COUNTS SIX,<br>SEVEN, AND EIGHT OF THE COMPLAINT |

Now come s the defendant, City of Haverhill ("City") and hereby moves to dismiss

Counts Six, Seven, and Eight of the Complaint. As grounds therefor, the City states that Counts

Six, Seven and Eight are barred by the applicable statutes of limitations. Furthermore, Counts

Seven and Eight are barred under G.L. c. 258, §10 and/or G.L. c. 152, §24. For these reasons, as

more fully set forth in the attached supporting Memorandum of Law, these counts of the

Complaint should be dismissed for failure to state a claim upon which relief can be granted.

WHEREFORE, the Defendant City of Haverhill respectfully requests that the within

Motion be granted, and that Counts Six, Seven and Eight of the Complaint be dismissed.

DEFENDANT CITY OF HAVERHILL,

By its attorneys,

Michele E. Randazzo (BBO# 64906)
Jackie Cowin (BBO# 655880)
Kopelman and Paige, P.C.
101 Arch Street
12th Floor
Boston, MA 02110-1109
(617) 556-0007

283599/RMI/0004

2

**D**

**TODD & WELD LLP**

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

MATTHEW J. FOGELMAN
Email: mfogelman@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

October 24, 2007

Civil Clerk's Office
Essex Superior Court House
145 High Street
Newburyport, MA  01950

> **Re:    Pettengill v. Curtis, et. al.,**
> **Essex Superior Court No. 2007-1733B**

Dear Sir or Madam:

Enclosed for filing in the above-referenced action, please find Plaintiff's Amended
Complaint and Jury Demand. Thank you for your attention to this matter.

Very truly yours,

Matthew J. Fogelman

MJF
Enclosure

cc:    Frank C. Corso, Esq. (with enclosure)
       Michelle Randazzo, Esq. (with enclosure)
       Michael J. Mazurzcak, Esq. (with enclosure)
       Lisa G. Arrowood, Esq.

COMMONWEALTH OF MASSACHUSETTS

ESSEX, SS.
SUPERIOR COURT DEPARTMENT
CIVIL ACTION NO.: 07-1733B

| | |
|---|---|
| FORREST PETTENGILL, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) |
| HOWARD CURTIS; THE CITY OF | ) |
| HAVERHILL, MASSACHUSETTS; | ) |
| BOY SCOUTS OF AMERICA, | ) |
| NATIONAL COUNCIL; | ) |
| YANKEE CLIPPER COUNCIL INC., | ) |
| BOY SCOUTS OF AMERICA | ) |
| (formerly known as LONE TREE | ) |
| COUNCIL OF BOY SCOUTS OF | ) |
| AMERICA); PAUL ERNST; JOSEPH | ) |
| ANGLIM; DAVID PARK; JAMES TARR | ) |
| and JOHN DOE ONE | ) |
| | ) |
| Defendants. | ) |

## PLAINTIFF'S AMENDED COMPLAINT AND JURY DEMAND

### The Parties

1.      The plaintiff Forrest Pettengill ("Plaintiff" or "Pettengill") is a 34-year-old

individual who resides in Derry, New Hampshire. He is a native of Haverhill, Massachusetts,

where he was raised.

2.      The defendant Howard Curtis ("Curtis") is an individual, who, upon information

and belief, presently resides in California. During the relevant times hereto, Curtis was an

employee of the Defendant City of Haverhill and was associated with the Boy Scouts of America

and Lone Tree Council, as an employee and/or a volunteer.

3.      The defendant City of Haverhill, Massachusetts ("City" or "Haverhill") was incorporated as a city in 1870 and is located in Essex County, Massachusetts.

4.      The defendant Boy Scouts of America, National Council ("Boy Scouts") is a body politic organized and created pursuant to 36 U.S.C. c. 309, with a principal place of business in Irving, Texas, and which conducts business in Massachusetts.

5.      The defendant Yankee Clipper Council, Inc., Boy Scouts of America, ("Yankee Clipper Council" or "the Council") is the successor to the Lone Tree Council of Boy Scouts of America, ("Lone Tree Council"), and is a non-profit corporation organized under the laws of the State of New Hampshire, with a principal place of business in Kingston, New Hampshire, which conducts business in Massachusetts.

6.      The defendant Paul Ernst ("Ernst"), at all relevant times, was an employee of the Boy Scouts of America, as the director of registration, and had knowledge that sexual abuse was prevalent within the Boy Scouts. Upon information and belief, Ernst was responsible for the "Confidential Files" and kept track of adults and boys registered with the Boy Scouts. Upon information and belief, Ernst resides at 3011 Southridge Court, Grapevine, Texas, 76051.

7.      The defendant Joseph Anglim ("Anglim"), at all relevant times, was an employee of the Boy Scouts of America, as the director of administration, and had knowledge that sexual abuse was prevalent within the Boy Scouts. Upon information and belief, Anglim was responsible for the "Confidential Files" and was the second in command at the Boy Scouts in his capacity as director of administration. In the late 1980's, many years after knowing about the sexual abuse problems, Anglim headed a Boy Scouts "youth protection" committee to teach Scouts and Scout leaders about sexual abuse. Upon information and belief, Anglim resides at 8 Glendale Court, Roanoke, Texas, 76262.

2

8.      The defendant David K. Park ("Park"), at all relevant times, was an employee of the Boy Scouts of America, as in-house counsel, and had knowledge that sexual abuse was prevalent within the Boy Scouts. Upon information and belief, Park was responsible for the "Confidential Files" Upon information and belief, Park is still employed by the Boy Scouts and resides at 9206 Moss Trail, Dallas, Texas, 75231.

9.      The defendant James Tarr ("Tarr"), between 1979 and 1985, was an employee of the Boy Scouts of America, as the Chief Scout Executive, the highest-ranking position within the Boy Scouts, and was affiliated with the Boy Scouts for many years before his tenure as Chief Scout Executive. Tarr had knowledge that sexual abuse was prevalent within the Boy Scouts. Upon information and belief, Tarr resides at 3362 Forest Lane, Apartment 401, Dallas, Texas, 75234.

10.     The defendant John Doe One was, at all relevant times, the Scout executive who served as a liaison between the Boy Scouts of America and the Lone Tree Council.

## Jurisdiction and Venue

11.     This Court has subject matter jurisdiction over this action pursuant to M.G. L. c. 212, §4. Venue is proper in this court pursuant to M.G. L. c. 223, §§1 and 8.

12.     This Court has jurisdiction over Defendants Ernst, Anglim, Park, and Tarr pursuant to M.G.L. c. 223A §3.

## Facts

## The Boy Scouts of America/Lone Tree Council – David Carter and Edward Gilmore

13.     In approximately late 1974, two 12-year-old boyhood friends from Haverhill, David Carter and Edward "Ted" Gilmore, joined the Boy Scouts and Lone Tree Council (Troop 11). The Lone Tree Council held meetings in Haverhill, Massachusetts.

3

14.     Upon joining the Scouts, Carter and Gilmore met the Defendant Howard Curtis, who was then the Troop's assistant scoutmaster. Shortly thereafter, Curtis, who was then about 26 or 27 years old, began sexually abusing Carter and Gilmore.

15.     The abuse with Carter was particularly pernicious, lasting for a period of years. Curtis repeatedly sexually molested Carter, hundreds of times, and forced Carter to engage in sexual acts of all manner and type.

16.     The abuse occurred on Boy Scouts camping trips throughout Massachusetts and New Hampshire, at Curtis' mother's house in Rockland, Massachusetts, and at Curtis' residences in Haverhill, including at the Kimball Tavern, where Curtis lived for a period as a caretaker, and at the John Greenleaf Whittier Birthplace, where Curtis lived for a period and where he was a Trustee.

17.     Curtis sexually molested Gilmore approximately six times in a two-year span. This abuse occurred predominantly during Boy Scouts camping trips to New Hampshire and at Curtis' mother's house in Rockland, Massachusetts.

18.     At times, Curtis provided alcohol to Carter and Gilmore and then sexually abused them or attempted to do so.

19.     Curtis often slept one-on-one in tents with Carter and sexually abused him during the night. Curtis would sometimes pretend to be sleeping while molesting Carter.

20.     On several occasions, Curtis slept one-on-one in tents with Gilmore and sexually abused him during the night. Curtis would sometimes pretend to be sleeping while molesting Gilmore.

21.     Curtis would often volunteer to sleep in a tent alone with either Carter or Gilmore.

4

22. G. Norman Woods ("Woods") was an employee of the Boy Scouts and Lone Tree Council, or was otherwise affiliated with the Boy Scouts and Lone Tree Council as Troop 11's scoutmaster. Woods frequently accompanied Troop 11 on overnight camping trips, including some when Curtis abused Carter and/or Gilmore. Woods knew or should have known that Curtis was sleeping in tents, one-on-one, with Boy Scouts members.

### The City of Haverhill – Carter and Gilmore

23. Upon information and belief, Defendant Howard Curtis was employed by the City of Haverhill and worked at the Public Library from the mid-1970's until 1995.

24. In the mid-through-late 1970's, Curtis was the city's Assistant Library Director.

25. In approximately 1976-1977, Curtis recruited David Carter, then approximately 14-15 years old, to work for him at the City Library. Curtis had already been sexually abusing Carter in the Boy Scouts. For a period of time thereafter, Carter was, on and off, a part-time Library employee with the City of Haverhill.

26. Throughout Carter's tenure as a Library employee, Defendant Curtis repeatedly sexually molested Carter and forced Carter to engage in sexual acts, including in the Library itself.

27. Curtis spent an unusual amount of time with Carter at the Library, in one-on-one situations. The intense attention paid by Curtis to a teenage boy in a workplace setting should have raised a level of suspicion.

28. In approximately 1977, Curtis recruited Ted Gilmore, then approximately 14-15 years old, to work for him at the City Library. For a period of time thereafter, Gilmore was, on and off, a part-time Library employee with the City of Haverhill.

5

29.    Throughout Gilmore's tenure as a Library employee, Curtis spent an unusual amount of time with Gilmore at the Library, in one-on-one situations. The intense attention paid by Curtis to a teenage boy in a workplace setting should have raised a level of suspicion.

30.    While at the Library, Curtis repeatedly asked Gilmore to accompany him on weekend camping trips. When Gilmore declined to go camping with him, Curtis confronted him and pressed him for reasons.

31.    In approximately 1980, the City promoted Curtis to the position of Library Director, a position he held continuously until approximately 1995. The City bestowed this promotion on Curtis despite the pattern he had established of recruiting young boys from the Boy Scouts to work intimately with him at the Library, despite the sexual abuse he had already inflicted upon David Carter at the Library, and even though the City knew or should have known of these behaviors.

32.    Upon information and belief, in his new position as Library Director, Curtis had even more autonomy and authority, and was virtually supervised.

## The Boy Scouts of America/Lone Tree Council – Forrest Pettengill

33.    Forrest Pettengill joined the Boy Scouts and Lone Tree Council in approximately 1983 or 1984, and shortly thereafter met the Defendant Howard Curtis. At this time, Pettengill was approximately 11 years old.

34.    The Lone Tree Council held meetings in Haverhill, Massachusetts.

35.    When Pettengill joined the Scouts, Curtis was an assistant leader/assistant scoutmaster of Pettengill's troop, Troop 11, and was an employee and/or a volunteer of the Boy Scouts and Lone Tree Council.

6

36.     In approximately 1984 or 1985, Curtis began repeatedly sexually molesting
Pettengill and forcing Pettengill to engage in sexual acts.

37.     The abuse with Pettengill was particularly pernicious, lasting for a period of
years. Curtis repeatedly sexually molested Pettengill, hundreds of times, and forced Pettengill to
engage in sexual acts of all manner and type.

38.     The abuse occurred on camping trips throughout Massachusetts and New
Hampshire, in Curtis' vehicles, and at Curtis' residences in the Haverhill area, including at the
John Greenleaf Whittier Birthplace, where Curtis lived for a period and where he was a Trustee.

39.     Curtis frequently provided alcohol to Pettengill and then sexually abused him.

40.     Curtis often slept one-on-one in tents with Pettengill and sexually abused him
during the night.

41.     Curtis told Pettengill that their relationship was normal and natural, gave
Pettengill gifts, and wrote him love letters.

42.     G. Norman Woods was still Troop 11's scoutmaster. Woods frequently
accompanied the troop on overnight camping trips. Woods knew or should have known that
Curtis was sleeping in tents, one-on-one, with Boy Scouts members, including Pettengill.

43.     In approximately 1985, G. Norman Woods stated, in words or in substance,
"Keep your eye out for Howard Curtis."

44.     The Boy Scouts, Lone Tree Council, Paul Ernst, Joseph Anglim, David Park,
James Tarr, and John Doe One had a duty to hire, employ, supervise, direct, train, control, and
retain Curtis during the relevant time period; and had a duty to protect children who could be
harmed and abused by individuals such as Curtis, during the time Pettengill was a Boy Scout.
These entities and individuals failed in these duties.

7

45.     The Boy Scouts, Lone Tree Council, Ernst, Anglim, Park, Tarr, and John Doe
One had a duty to prevent Curtis from using his Boy Scouts position to sexually abuse and
molest children, including Pettengill. These entities and individuals breached this duty by failing
to ensure that Curtis did not sexually abuse children, including Pettengill.

46.     The Boy Scouts, Lone Tree Council, Ernst, Anglim, Park, Tarr, and John Doe
One had a duty to institute policies, protocols, and procedures to a) ensure that the Boy Scouts of
America and local organizations such as the Lone Tree Council were not utilized as a haven for
child molesters to sexually abuse children; b) prevent child abuse and molestation within the Boy
Scouts; and c) protect the children in the Boy Scouts' and/or Lone Tree Council's custody.

47.     The Boy Scouts, Lone Tree Council, Ernst, Anglim, Park, Tarr, and John Doe
One breached this duty by either a) failing to create appropriate policies, protocols, and
procedures to ensure against sexual abuse; or b) failing to institute, implement, and enforce
policies and procedures that may have theoretically existed.

48.     Had these Defendants appropriately created, implemented, and enforced such
policies, such individuals such as Woods and John Doe One, who were in closer proximity to
Curtis and who knew or should have known of his inappropriate conduct with young Boy Scouts,
could have taken steps to prevent his abuse of Pettengill and/or reported such behavior to others
in the organization who could have stopped Curtis' behavior, by, among other things, banning
him from the Scouts.

49.     In addition, the Boy Scouts may have had policies and procedures but failed to
disseminate those policies and procedures to local councils and/or to take steps to enforce them.

8

50.     As a result of Curtis' sexual molestation and the negligence of the Boy Scouts, Lone Tree Council, Ernst, Anglim, Park, Tarr, and John Doe One, Pettengill has suffered damages, including severe physical and emotional injuries.

51.     As a result of Curtis' sexual molestation and the negligence of Boy Scouts, Lone Tree Council, Ernst, Anglim, Park, Tarr, and John Doe One, Pettengill suffered from substance abuse as a young adult and began to suffer from mental illness as he approached age 30.

52.     Until, at the earliest, March 2006, when he began intensive therapy following a stay in a mental hospital, Pettengill did not connect the sexual abuse with the harms he was suffering. Furthermore, Pettengill had no true appreciation or realization that Curtis' conduct constituted sexual abuse and that many of Pettengill's most significant problems stemmed directly from the abuse, in part because Curtis indoctrinated him into believing that the "relationship" was normal and encouraged and cajoled him into sexual activity.

53.     Accordingly, Pettengill did not appreciate or realize that his harm and injuries were connected to and stemmed from the sexual abuse.

## The Boy Scouts' History of Sexual Abuse: The Conduct of Ernst, Anglim, Park, Tarr, and John Doe One

54.     The Boy Scouts of America have known, for nearly 100 years, that sexual abuse and molestation was a problem within the Boy Scouts organization. As early as 1911, the Boy Scouts developed an Ineligible Volunteer File, later known as the Confidential Files, containing names of men who were banned from the Scouts.

55.     The Confidential Files were kept in the national office, as opposed to local offices, in order to protect the abusers in their local communities and so the Scouts could try to avoid producing files if they were subpoenaed.

9

56.     In the 1930's, Boy Scouts officials wrote memos to each other concerning the "careless and casual approaches" to recruiting adults to work in the Scouts.

57.     The Scouts have long been aware that campouts and camping trips are the most common setting for sexual abuse. Despite this knowledge, the Boy Scouts, for decades, either did not have appropriate policies and procedures regarding sexual abuse, or failed to implement and enforce such policies and procedures.

58.     In the early to mid-1970s, the Boy Scouts and Paul Ernst received files about Boy Scouts leaders encouraging boys to share a tent or a sleeping bag with the leaders. It was clear to the Boy Scouts that tent sharing was a popular tactic for sexual abuse because the Boy Scouts and Ernst knew that tent sharing provided an isolated, private environment.

59.     In the 1970's and 1980's, Defendants Ernst, Anglim, and Park housed the Confidential Files. Park and Ernst would review a file to make sure the evidence was strong enough to ban the Boy Scout leader in question. Park and Ernst would then bring the Files into Anglim's office and Anglim would stamp the cover sheet of each file, making the File "official." The cover sheet of each file often contained a short summary of why a given Scout leader was banned, including terms such as "homosexual molestation of three Scouts" and "child molesting."

60.     In the late 1970's and early 1980's, Defendant Tarr was the Chief Executive Scout of the Boy Scouts. Tarr knew, going back to early in his Scouting career in the 1940s, that sexual abuse was a problem within the organization. As Chief Executive, Tarr issued and implemented policies and procedures on a myriad number of subjects. He failed to do so with respect to sexual abuse.

10

61. Defendants Ernst, Anglim, Park, and Tarr knew of a significant sexual abuse problem within the Boy Scouts, turned a blind eye to the mountainous evidence of sexual abuse, and took no action whatsoever to protect Boy Scouts members or to address sexual abuse occurring within the Boy Scouts.

62. Ernst, Anglim, Park, and Tarr did not enact any policies or procedures concerning sexual abuse or failed to implement, enforce, or disseminate policies and procedures that may have theoretically existed.

63. Curtis shared tents one-on-one with Boy Scouts members for at least 15 years. G. Norman Woods and other adult Boy Scout leaders knew of Curtis' one-on-one tent sharing with Scouts members and did nothing to prevent it. The Boy Scouts, Lone Tree Council, and Woods failed to supervise Curtis and allowed him free reign within the Scouts, including spending one-on-one time with Scouts, which enabled him easy access to sexually abuse them.

64. Sex abuse scandals rocked the Boy Scouts in Oklahoma, New Orleans, and Colorado in the mid-1970's. The Boy Scouts, Ernst, Anglim, Park, and Tarr did nothing to communicate with or inform either Boy Scouts members or Boy Scouts leaders about the dangers of sexual abuse.

65. In 1977, the Boy Scouts learned that a California Boy Scouts leader was being accused of sexual abuse. Anglim passed the information to Ernst, and wrote a note asking: "Paul, is this a new one for us – or did he slip by our File?"

66. In 1977, a Massachusetts assistant scoutmaster was arrested for child molestation of several boys. The Boy Scouts, Ernst, Anglim, Park, Tarr, and John Doe One did nothing to communicate with or inform either Boy Scouts members or Boy Scouts leaders in Massachusetts about the dangers of sexual abuse.

11

67.     In or around this same timeframe, Howard Curtis was sexually abusing David Carter and Ted Gilmore within the Boy Scouts and Lone Tree Council.

68.     In 1981, a Boy Scouts publication discussed sex within the Scouts, but focused on children as perpetrators, warning about boys joining the Boy Scouts to have sex with other boys, but issuing no warning about men.

69.     In 1983 and 1984, the Boy Scouts kicked out approximately 140 Scout leaders for allegedly molesting children. Despite these numbers, the Boy Scouts, Ernst, Anglim, Park, and Tarr did not issue and/or enforce any policies or procedures pertaining to sexual abuse and did not communicate with Boy Scouts members about sexual abuse.

70.     At the same time period, Curtis continued to be unsupervised. In the same timeframe, Curtis met Pettengill and shortly afterwards began sexually abusing him at the Boy Scouts.

71.     In 1985, the Scouts were sued six more times concerning sex abuse, bringing the total number of cases to twelve.

72.     In the September 1985 issue of Scouting Magazine, the Boy Scouts' national office published a Statement About Child Abuse, stating that sexual abuse was a concern in society and that the Scouts shared that concern. The statement urged parents to stay involved in their children's lives. It said nothing about sexual abuse within the Boy Scouts.

73.     In 1987, at least 15 more lawsuits were filed against the Boy Scouts. Curtis continued to sexually abuse Pettengill with no supervision or oversight within the Boy Scouts and Lone Tree Council.

12

74. By this time, Ernst, Anglim, and Park had, in the national office, Confidential Files on approximately 930 leaders banned for suspected child molesting from 1971 to 1987, with about 800 of them suspected of molesting Boy Scouts.

75. In 1987, Anglim headed a "youth protection committee" to figure out how to teach Scouts and Scout leaders about sexual abuse.

76. In 1988, the Boy Scouts issued its Youth Protection Guidelines and a set of rules called "barriers to abuse," which set forth that two adult leaders must be on all trips and that a Scout cannot share a tent with an adult leader.

77. By the time the Youth Protection Guidelines and "barriers to abuse" were issued, Curtis had been abusing Boy Scouts for nearly 15 years and abusing Pettengill for about four years. Despite these Guidelines, Curtis continued abusing Pettengill because the Guidelines were not enforced.

## The City of Haverhill - Pettengill

78. Upon information and belief, despite his spending inordinate amounts of time, one-on-one, with adolescent boys, and despite sexually abusing David Carter at the Library, Howard Curtis was promoted by the City of Haverhill to the position of Library Director in approximately 1980 and held that position in approximately 1995.

79. In approximately 1986, Curtis recruited Pettengill, then approximately 13 years old, to work for him at the City Library. Pettengill was thereafter, on and off, a part-time Library employee with the City of Haverhill. As with David Carter, Curtis knew Pettengill from the Boy Scouts and had already begun abusing him when he recruited Pettengill to the Library.

80. Pettengill worked for the City of Haverhill for several years. Throughout his tenure as a Library employee, Defendant Curtis repeatedly sexually molested Pettengill and

13

forced Pettengill to engage in sexual acts. Curtis also abused Pettengill at the Library when Curtis was Library Director and Pettengill was not a Library employee.

81.     Curtis was Pettengill's direct supervisor at the Library. Pettengill's job responsibilities consisted of whatever tasks Curtis assigned to him, including, but not limited to, setting up and tearing down exhibits and data entry.

82.     Curtis lured Pettengill to the Library at night, after normal business hours, for sexual activity.

83.     Curtis told Pettengill that their relationship was normal and natural, gave Pettengill gifts, and wrote him love letters.

84.     Curtis spent an unusual amount of time with Pettengill at the Library, in one-on-one situations. The focused and deep attention paid by Curtis to a teenage boy in a workplace setting should have raised suspicions, particularly when Curtis had already established a pattern dating back a decade of bringing Boy Scouts to the Library to work directly for him, in an intense one-on-one dynamic.

85.     The City was on notice dating back to approximately 1976-1977 that Curtis recruited teenage boys to work for him at the Library in intense one-on-one situations, and knew or should have known that Curtis was engaging in suspicious, inappropriate relationships with young, male, City employees.

86.     The City of Haverhill, as Curtis' employer, had a duty to, *inter alia*, act reasonably in hiring, employing, supervising, and retaining Curtis during the relevant time period in order to reasonably ensure the safety of other employees and library patrons who could be harmed and/or abused by Curtis. The City had these duties during the time Pettengill worked for the City as a Library employee and reported directly to Curtis. It failed in these duties.

14

87.     Curtis was not properly supervised when he was the City's Library Director.

88.     The City did nothing to ensure that Curtis did not sexually abuse children, including Pettengill, despite the fact that the City knew or should have known, dating back to approximately 1976-1977, that Curtis recruited adolescent boys to work for him at the Library in intense one-on-one situations.

89.     As a result of Curtis' sexual molestation, Pettengill has suffered damages, including severe physical and emotional injuries.

90.     Until, at the earliest, March 2006, when he began intensive therapy following a stay in a mental hospital, Pettengill did not connect the sexual abuse with the harms he was suffering. Furthermore, Pettengill had no true appreciation or realization that Curtis' conduct constituted sexual abuse and that many of Pettengill's most significant problems stemmed directly from the abuse, in part because Curtis indoctrinated him into believing that the "relationship" was normal and encouraged and cajoled him into sexual activity.

91.     Accordingly, Pettengill did not appreciate or realize that his harm and injuries were connected to and stemmed from the sexual abuse.

## Pettengill's Life Unravels

92.     Throughout the 1990's, Pettengill abused drugs and alcohol, was hypersexual, and experienced sexual identity confusion. Despite battling these issues, Pettengill was able to maintain a residence and employment and live a relatively "normal" life.

93.     In 2002, Pettengill was working for New England Financial as a registered representative, selling life and disability insurance. He began experiencing racing thoughts, paranoia, erectile dysfunction, fear of public speaking, and a feeling of being very hyper. He

15

sought medical care and was diagnosed with Bipolar Disorder II. He took some medication and started therapy, but shortly abandoned these treatments and continued working.

94.     In June 2004, Pettengill was abusing drugs, suffered a psychotic episode, and was hospitalized for several days at Portsmouth Regional Hospital in New Hampshire. He found it increasingly difficult to work and keep up with his life in general. At that time, he owned a three-family home in Raymond, New Hampshire and a car. He tried to continue working, but lost his job in mid-2005 and then lost his house.

95.     Pettengill continued to use drugs and engage in other risky behavior, including hyper-sexuality. On December 23, 2005, Pettengill had a psychotic episode and was hospitalized again. He spent approximately ten days in the psychiatric ward of Concord Hospital in New Hampshire. He was diagnosed with Bipolar Disorder I, post-traumatic stress disorder, obsessive-compulsive disorder, and a personality disorder.

96.     Pettengill then began therapy at Riverbend Community Mental Health in Concord, New Hampshire.

97.     In March 2006, with the assistance of therapy, Pettengill started to realize that he had been abused by Curtis and started to connect the abuse and the harm/injuries he had suffered.

98.     Pettengill did not realize or understand, until late September 2006, that he had been sexually harassed by Curtis at the City of Haverhill Public Library when both Curtis and Pettengill were employed by the City.

99.     Since mid-2005, Pettengill has been unable to work and receives Social Security disability benefits. He continues in intensive therapy for his emotional problems.

16

## COUNT ONE

### Pettengill v. Curtis

### Violation of Mass G. L. c. 151B (Sexual Harassment)

100.    The Plaintiff repeats and realleges the allegations above as if fully stated herein.

101.    Curtis recruited Pettengill to work for him part-time at the City of Haverhill

public library. Curtis was Pettengill's supervisor and directed his activities at the Library.

102.    Curtis subjected Pettengill to unwelcome conduct of a sexual nature, which

unreasonably interfered with Pettengill's work performance.

103.    With his conduct, Curtis created an intimidating, hostile, and sexually offensive

work environment for Pettengill.

104.    As a direct and proximate result of Curtis' conduct, the Plaintiff suffered

damages, including physical and emotional injuries, and will continue to suffer damages in the

future.

## COUNT TWO

### Pettengill v. Curtis

### Sexual Assault and Battery

105.    The Plaintiff repeats and realleges the allegations above as if fully stated herein.

106.    By engaging in the egregious and explicit sexual behavior described above, Curtis

acted intentionally so as to cause harmful and offensive contact with Pettengill.

107.    As a direct and proximate result of Curtis' unjustified harmful and offensive

contact, Pettengill suffered damages, including physical and emotional injuries, and will continue

to suffer damages in the future.

17

## COUNT THREE

### Pettengill v. Curtis

### Intentional Infliction of Emotional Distress

108.    The Plaintiff repeats and realleges the allegations above as if fully stated herein.

109.    By engaging in the egregious and explicit sexual behavior described above, Curtis

intended to inflict emotional distress upon Pettengill, or knew or should have known that

emotional distress was the likely result of his conduct.

110.    Curtis' conduct as described above was extreme and outrageous, beyond all

possible bounds of decency, and utterly intolerable in a civilized community.

111.    As a direct and proximate result of Curtis' conduct, Pettengill suffered severe

physical and emotional distress.

## COUNT FOUR

### Pettengill v. Curtis

### Negligence

112.    The Plaintiff repeats and realleges the allegations above as if fully stated herein.

113.    Curtis owed Pettengill a duty to refrain from, *inter alia*: violating the boundaries

imposed by the supervisor-employee relationship; physically and sexually abusing him when he

was a child and a teenager; molesting him, and causing him harm.

114.    Curtis repeatedly breached those duties by his abusive acts and conduct.

115.    As a direct and proximate result of Curtis' negligence, the Plaintiff suffered

damages, including physical injuries, and will continue to suffer damages in the future.

18

## COUNT FIVE

### Pettengill v. Curtis

### Negligent Infliction of Emotional Distress

116.    The Plaintiff repeats and realleges the allegations above as if fully stated herein.

117.    As a direct and proximate result of Curtis' negligence, Pettengill has suffered

severe emotional distress and anguish with resulting physical symptoms and injury.

## COUNT SIX

### Pettengill v. City of Haverhill

### Violation of Mass G. L. c. 151B (Sexual Harassment)

118.    The Plaintiff repeats and realleges the allegations above as if fully stated herein.

119.    Curtis subjected Pettengill to unwelcome conduct of a sexual nature, which

unreasonably interfered with Pettengill's work performance. Curtis was Pettengill's direct

supervisor at the Library.

120.    Curtis' conduct created an intimidating, hostile, humiliating or sexually offensive

work environment for Pettengill.

121.    The City of Haverhill is strictly liable for the sexual harassment of Pettengill by

his direct supervisor, Curtis.

122.    As a direct and proximate result of Curtis' conduct alleged as described herein,

Pettengill suffered damages, including physical and emotional injuries, and will continue to

suffer damages in the future.

123.    Pettengill filed a charge of discrimination with the Massachusetts Commission

Against Discrimination on November 7, 2006. Pettengill obtained a right to sue letter from the

Commission in mid-December 2006.

19

## COUNT SEVEN

### Pettengill v. City of Haverhill

### Violation of the Mass. Tort Claims Act, G. L. c. 258 (Negligence)

124. The Plaintiff repeats and realleges the allegations above as if fully stated herein.

125. As set forth above, Curtis was Pettengill's direct supervisor while he was the City of Haverhill Library Director and sexually abused Pettengill while Pettengill was a City employee.

126. Curtis also abused Pettengill at the Library when Pettengill was not a Library employee and after normal working hours.

127. During the relevant time period, the City of Haverhill was responsible for the hiring, retention, direction, and supervision of Curtis.

128. The City negligently hired and retained Curtis, and negligently, improperly, and inadequately supervised him.

129. The City was on notice, dating back to at least 1976-1977, that Curtis recruited young Boy Scouts to work for him at the Library, in intense one-on-one situations, yet did nothing to properly supervise Curtis, allowing him free reign in the Library, seemingly with no oversight. Moreover, since at least the mid-1970s, Curtis used the Library itself as a frequent locus of sexual activity with boys.

130. The City knew or should have known that Curtis was sexually abusing boys at the Library dating back to 1976-1977.

131. Nonetheless, the City promoted Curtis to the position of Library Director in 1980, in which position, upon information and belief, he was without day-to-day oversight and had increased authority and autonomy.

20

132.    As a direct and proximate result of the City's negligence, the Plaintiff was

sexually abused by Curtis and suffered damages, including physical and emotional injuries, and

will continue to suffer damages in the future.

133.    On November 10, 2006, pursuant to G.L. c. 258, § 4, Pettengill presented a claim

under that statute to William D. Cox Jr., Esquire, who was City Solicitor for the City of

Haverhill and, in accordance with G.L. c. 258, § 1, a Public Attorney of the City for purposes of

the presentment of Pettengill's claim.

134.    Presentment of that letter was proper under G.L. c. 258, § 4.

135.    The City did not respond to the letter and did not make any settlement offer.

## COUNT EIGHT

### Pettengill v. City of Haverhill

### Violation of the Mass. Tort Claims Act, G. L. c. 258 (Negligent Infliction of Emotional Distress)

136.    The Plaintiff repeats and realleges the allegations above as if fully stated herein.

137.    As a direct and proximate result of the City's negligence, Pettengill has suffered

severe emotional distress and anguish with resulting physical symptoms and injury.

## COUNT NINE

### Pettengill v. Boy Scouts of America and Yankee Clipper Council/Lone Tree Council

### Respondeat Superior

138.    The Plaintiff repeats and realleges the allegations above as if fully stated herein.

139.    During the relevant time period, Curtis was a Boy Scouts/Lone Tree Council

troop leader and Pettengill was a member of the troop.

21

140. The Boy Scouts and Yankee Clipper Council/Lone Tree Council are vicariously

liable for Curtis' conduct because Curtis' acts were committed within the scope of his

employment as a troop leader and his affiliation with the Boy Scouts.

141. The Boy Scouts and Yankee Clipper Council/Lone Tree Council are also charged

with G. Norman Woods' knowledge about Curtis' conduct and his inaction.

142. The Boy Scouts are vicariously liable for the conduct and inaction of Defendants

Ernst, Anglim, Park, Tarr, and John Doe One.

143. The Boy Scouts and Yankee Clipper Council/Lone Tree Council are vicariously

liable for damages Pettengill suffered as a result of Curtis' sexual abuse.

## COUNT TEN

### Pettengill v. Boy Scouts of America, Yankee Clipper Council/Lone Tree Council, Paul Ernst, Joseph Anglim, David Park, James Tarr, and John Doe One

#### Negligent Hiring, Retention, Direction & Supervision

144. The Plaintiff repeats and realleges the allegations above as if fully stated herein.

145. During the relevant time period, the Boy Scouts, Yankee Clipper Council/Lone

Tree Council, Ernst, Anglim, Park, Tarr, and John Doe One were responsible for the hiring,

retention, direction, and supervision of Curtis.

146. During the relevant time period, the Boy Scouts, Yankee Clipper Council/Lone

Tree Council, Ernst, Anglim, Park, Tarr, and John Doe One negligently hired and retained

Curtis, and negligently, improperly, and inadequately directed and supervised him.

147. The Boy Scouts, Yankee Clipper Council/Lone Tree Council, Ernst, Anglim,

Park, Tarr, and John Doe One knew or should have known, dating back to at least 1974, that

Curtis' conduct was improper, including providing alcohol to Boy Scouts, sleeping in tents one-

on-one with Boy Scouts, and sexually abusing Boy Scouts, particularly in light of G. Norman

Woods' awareness of these behaviors. Yet these Defendants did nothing to properly supervise Curtis, allowing him free reign within the Scouts and Council, with inadequate oversight.

148. As a direct and proximate result of the Boy Scouts', Yankee Clipper Council/Lone Tree Council, Ernst's, Anglim's, Park's, Tarr's, and John Doe One's negligence, the Plaintiff suffered damages, including physical and emotional injuries, and will continue to suffer damages in the future.

## COUNT ELEVEN

### Pettengill v. Boy Scouts of America, Yankee Clipper Council/Lone Tree Council, Paul Ernst, Joseph Anglim, David Park, James Tarr, and John Doe One

### Negligent Failure to Institute, Implement, and Enforce Policies, Procedures, and Protocols

149. The Plaintiff repeats and realleges the allegations above as if fully stated herein.

150. During the relevant time period, the Boy Scouts, Yankee Clipper Council/Lone Tree Council, Ernst, Anglim, Park, Tarr, and John Doe One were responsible for, *inter alia*, instituting policies, procedures, and protocols to a) ensure that the Boy Scouts of America and local organizations such as the Lone Tree Council were not utilized as a haven for child molesters to sexually abuse children; b) prevent child abuse and molestation; and c) protect the children in their custody.

151. During the relevant time period, the Boy Scouts, Yankee Clipper Council/Lone Tree Council, Ernst, Anglim, Park, Tarr, and John Doe One were negligent in their failure to institute and/or implement and enforce such policies, procedures, and protocols.

152. The Boy Scouts, Yankee Clipper Council/Lone Tree Council, Ernst, Anglim, Park, Tarr, and John Doe One failed to implement and/or enforce these policies, procedures, and protocols even though they knew that sexual abuse was a significant problem within the Boy Scouts organization.

23

153. The Boy Scouts, Yankee Clipper Council/Lone Tree Council, Ernst, Anglim,

Park, Tarr, and John Doe One did not protect Pettengill from Curtis, despite the fact that Curtis had been sexually abusing boys within the Boy Scouts for a decade before he even met Pettengill and despite the fact that these Defendants knew for years that sexual abuse was prevalent within the Boy Scouts, including in Massachusetts in 1977.

154. As a direct and proximate result of the Boy Scouts', Yankee Clipper

Council/Lone Tree Council's, Ernst's, Anglim's, Park's, Tarr's, and John Doe One's negligence, the Plaintiff suffered damages, including physical and emotional injuries, and will continue to suffer damages in the future.

## COUNT TWELVE

### Pettengill v. Boy Scouts of America, Yankee Clipper Council/Lone Tree Council, Paul Ernst, Joseph Anglim, David Park, James Tarr, and John Doe One

#### Negligent Infliction of Emotional Distress

155. The Plaintiff repeats and realleges the allegations above as if fully stated herein.

156. As a direct and proximate result of the Boy Scouts', Yankee Clipper

Council/Lone Tree Council's, Ernst's, Anglim's, Park's, Tarr's, and John Doe One's negligence, Pettengill has suffered severe emotional distress and anguish with resulting physical symptoms and injury.

24

WHEREFORE, Plaintiff prays that this Honorable Court:

a.  enter judgment in his favor on Counts One through Twelve;

b.  award damages as allowed by law, plus interest at 12% from the date of the original Complaint;

c.  award interest on his Chapter 151B claims from the date of the MCAD filing, November 7, 2006;

d.  award costs and attorneys' fees;

e.  award punitive damages; and

f.  grant such other and further relief as this Court deems just and appropriate.

## PLAINTIFF DEMANDS A TRIAL BY JURY ON ALL COUNTS SO TRIABLE.

The Plaintiff,

FORREST PETTENGILL

By his attorneys,

*Matt7*

Lisa G. Arrowood (BBO #022330)
Matthew J. Fogelman (BBO #653916)
TODD & WELD LLP
28 State Street, 31st Floor
Boston, MA 02109
(617) 720-2626

Dated: October 24, 2007

25

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

MATTHEW J. FOGELMAN
Email: mfogelman@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

October 25, 2007

**VIA CERTIFIED MAIL**
**Article No. 7004 2890 0002 3151 5841**

*Paul Ernst*
*was served*
*on*
*10/30/07*

Paul Ernst
3011 Southridge Court
Grapevine, Texas 76051

> Re:  **Pettengill v. Curtis, et. al.,**
> **Essex Superior Court No. 2007-1733B**

Dear Mr. Ernst:

Enclosed in connection with the above-referenced action, please find a Summons and Plaintiff's Amended Complaint and Jury Demand.

Very truly yours,

*Matt F*

Matthew J. Fogelman

MJF/smm
Enclosures

cc:  Lisa G. Arrowood, Esq.

RECEIVED
NOV - 7 2007

*REL'D 10-30-07*
*Paul Ernst*

( TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action involved:* - TORT - MOTOR VEHICLE TORT -
CONTRACT - EQUITABLE RELIEF - OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX. ss.

SUPERIOR COURT
CIVIL ACTION
No.  07-1733B

**Forrest Pettengill**

....................................................................................................................................., Plaintiff(s)

**Howard Curtis; The City of Haverhill, Massachusetts; Boy Scouts of
America, National Council; Yankee Clipper Council Inc., Boy Scouts of
America (formerly known as Lone Tree Council of Boy Scouts of America);
Paul Ernst; Joseph Anglim; David Park; James Tarr and John Doe One**

....................................................................................................................................., Defendant(s)

## SUMMONS

To the above named Defendant:  Paul Ernst

You are hereby summoned and required to serve upon __Lisa G. Arrowood, Matthew J. Fogelman,__

plaintiff's attorney, whose address is __TODD & WELD LLP, 28 State St., Boston, MA 02109__, an answer to th

complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the

day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at

145 High Street
Newburyport, MA   01950 ___ either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

WITNESS, SUZANNE V. DelVECCHIO, Esquire, at Salem, the
day of                                   , in the year of our Lord two thousand

*Thomas H. Driscoll Jr.*
*Clerk*

NOTES:
1.  This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2.  When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for ea
    defendant, each should be addressed to the particular defendant.

# TODD & WELD LLP

ATTORNEYS AT LAW
28 STATE STREET
BOSTON, MASSACHUSETTS 02109

MATTHEW J. FOGELMAN
Email: mfogelman@toddweld.com

TELEPHONE: (617) 720-2626
FACSIMILE: (617) 227-5777
www.toddweld.com

October 25, 2007

## VIA CERTIFIED MAIL
## Article No. 7004 2890 0002 3151 5827

David K. Park
9206 Moss Trail
Dallas, Texas 75231

> **Re:** **Pettengill v. Curtis, et. al.,**
> **Essex Superior Court No. 2007-1733B**

Dear Mr. Park:

Enclosed in connection with the above-referenced action, please find a Summons and Plaintiff's Amended Complaint and Jury Demand.

Very truly yours,

*Matt7-2*

Matthew J. Fogelman

MJF/smm
Enclosures

cc:    Lisa G. Arrowood, Esq.

, TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:* -  TORT  -  MOTOR VEHICLE TORT  -
CONTRACT  -  EQUITABLE RELIEF  -  OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX. ss.

SUPERIOR COURT
CIVIL ACTION
No.  07–1733B

**Forrest Pettengill**

........................................................................................................................ , Plaintiff(s)

**Howard Curtis; The City of Haverhill, Massachusetts; Boy Scouts of
America, National Council; Yankee Clipper Council Inc., Boy Scouts of
America (formerly known as Lone Tree Council of Boy Scouts of America);
Paul Ernst; Joseph Anglim; David Park; James Tarr and John Doe One**

........................................................................................................................ , Defendant(s)

## SUMMONS

To the above named Defendant:  David Park

You are hereby summoned and required to serve upon Lisa G. Arrowood, Matthew J. Fogelman,

plaintiff's attorney, whose address is TODD & WELD LLP, 28 State St., Boston, MA  02109 , an answer to tl

complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the

day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at
145 High Street
Newburyport, MA  01950
_____ either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

WITNESS, SUZANNE V. DelVECCHIO. Esquire, at Salem, the
day of                              , in the year of our Lord two thousand

*Thomas H. Driscoll*

Clerk

NOTES.
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for
   defendant, each should be addressed to the particular defendant.

˛TO PLAINTIFF'S ATTORNEY: *Please Circle Type of Action Involved:* - TORT - MOTOR VEHICLE TORT -
CONTRACT - EQUITABLE RELIEF - OTHER.)

# COMMONWEALTH OF MASSACHUSETTS

ESSEX. ss.

SUPERIOR COURT
CIVIL ACTION
No. 07-1733B

### Forrest Pettengill

........................................................................................................................................................, Plaintiff(s)

Howard Curtis; The City of Haverhill, Massachusetts; Boy Scouts of
America, National Council; Yankee Clipper Council Inc., Boy Scouts of
America (formerly known as Lone Tree Council of Boy Scouts of America);
Paul Ernst; Joseph Anglim; David Park; James Tarr and John Doe One

........................................................................................................................................................, Defendant(s)

## SUMMONS

To the above named Defendant: James Tarr

You are hereby summoned and required to serve upon Lisa G. Arrowood, Matthew J. Fogelman,

plaintiff's attorney, whose address is TODD & WELD LLP, 28 State St., Boston, MA   02109 , an answer to the

complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the

day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the

complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at
145 High Street
Newburyport, MA   01950  either before service upon plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by Rule 13 (a), your answer must state as a counterclaim any claim which you may
have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's
claim or you will thereafter be barred from making such claim in any other action.

WITNESS, SUZANNE V. DelVECCHIO. Esquire, at Salem, the
day of                              , in the year of our Lord two thousand

Thomas H. Driscoll Jr.
Clerk

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all defendants should appear in the caption. If a separate summons is used for each
   defendant, each should be addressed to the particular defendant.

NOTICE TO DEFENDANT - You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's Office.